# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADLEY C. WEITZEL,<br><br>Petitioner,<br><br>v.<br><br>GERALD ROZUM, THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA and THE DISTRICT ATTORNEY OF BUTLER COUNTY,<br><br>Respondents. | Civil Action No. 12 –1338<br><br>Chief Magistrate Judge Lisa Pupo Lenihan |

## MEMORANDUM OPINION

Bradley C. Weitzel ("Petitioner"), a state prisoner incarcerated at the State Correctional Institution at Somerset, has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, his petition and a certificate of appealability will be denied.

## I. BACKGROUND

The Pennsylvania Superior Court set forth the following recitation of facts underlying this case:

> By criminal complaint filed July 19, 2006, [Petitioner], [Petitioner]'s wife, Mary Weitzel, and [Petitioner]'s son, Bradley E. Weitzel, were charged with [manufacturing a controlled substance (marijuana), possession with intent to deliver (marijuana), criminal conspiracy to commit possession and manufacturing of a controlled substance (marijuana), two counts of possession of a controlled substance (marijuana; mushrooms containing psilocybin or psilocin), and possession of drug paraphernalia]. Their cases were joined for prosecution in a single trial pursuant to Pennsylvania Rule of Criminal Procedure 582(A)(2). On

1

February 28, 2007, [Petitioner] filed an omnibus pre-trial suppression motion. The trial court held a hearing on the suppression motion on September 10, and October 22, 2007. On November 1, 2007, [Petitioner] filed a brief in support of his suppression motion. The Commonwealth filed its brief in support of denying [Petitioner]'s motion on November 19, 2007. After hearing evidence and upon review of the parties' briefs, the trial court denied [Petitioner]'s suppression motion on December 6, 2007. In denying [Petitioner]'s motion, the trial court made the following findings of fact[:]

1. Anthony Lemon has been a courier for DHL for two years.

2. On June 22, 2006, Mr. Lemon noticed a package addressed to Bradley C. Weitzel, 441 Portman Rd., Butler, Pa, marked to be delivered to "addressee only".

3. No one was home at the address when Mr. Lemon arrived.

4. As Mr. Lemon walked back to the DHL truck with the package[, a] person arrived and Mr. Lemon informed the person that the package was to be delivered to the addressee only and that he would come back after delivering additional packages.

5. Mr. Lemon received a message within 30 minutes to an hour after going to the address, which stated that anyone could sign for the package.

6. Mr. Lemon continued on his normal route, which took him to the Butler County Courthouse[,] and [he] ran the suspicious package through the security x-ray machine along with other packages.

7. Mr. Lemon walked around behind the security machine while the package was going through and was able to observe syringes contained in the package.

8. Mr. Lemon took the package to the City of Butler Police Department to ask if someone could look at the strange package.

9. Butler City Police Chief Tim Fennell went to look at the package, which was in the back compartment of the DHL truck.

10. Chief Fennell has been a police officer for 28 years and has been involved with over 1200 drug investigations.

11. Chief Fennell detected a strong organic odor emanating from the package. He further noticed that the return label was from Texas, an indicator state, and that it was to be delivered to "addressee only," and that the address was outside of his jurisdiction.

12. Chief Fennell requested that the package be turned over to the County Drug Task Force and contacted Detective Cannon.

13. Detective Cannon asked that the package be delivered to the Butler County Courthouse.

14. Mr. Lemon brought the package to the Courthouse and was met by Detective Cannon.

15. Detective Cannon asked Mr. Lemon to bring in other packages and brought in Canine Officer Disco to sniff the packages.

16. Canine Officer Disco "hit" on the package.

17. Lieutenant Mike Dalcamo has been a police officer with the City of Butler for 18 years and is the supervisor of the Butler County Drug Task Force.

18. Detective Cannon delivered the package to Lieutenant Dalcamo at the City of Butler Police Station.

19. Lieutenant Dalcamo looked at the package, smelled it, and looked at the label.

20. Lieutenant Dalcamo applied for a search warrant for the package and immediately opened the package upon receipt [of] the search warrant.

21. After viewing the contents of the package, Lieutenant Dalcamo applied for a search warrant for the address on the package, 441 Portman Rd., Summit Twp., Butler County.

22. Lieutenant Dalcamo participated in the search of the house at 441 Portman Rd., Summit Twp, Butler County, where he met [Petitioner] on the porch and produced the search warrant.

23. Lieutenant Dalcamo explained what was contained in the search warrant and gave a copy to [Petitioner].

24. [Petitioner] was handcuffed in order for the officers to secure the residence.

25. [Petitioner] told Lieutenant Dalcamo that what they were looking for was in the bedroom.

According to the criminal complaint, during their search of the house, the officers recovered from the bedrooms and common areas several pounds of marijuana, a psilocybe mushroom grow kit, several bags of suspected psilocybe

3

mushrooms, eight marijuana plants, a computer with websites showing how to grow mushrooms, prescription pills, cash, many items of paraphernalia for growing and smoking marijuana, and two pistols, two rifles, and two shotguns.

On September 25, 2009, Mary Weitzel filed a motion to sever, claiming she would suffer prejudice if her motion were not granted because [Petitioner] planned to represent himself and to testify at trial, and she viewed [Petitioner]'s approach to be antagonistic to her case. On October 13, 2009, [Petitioner]'s counsel requested that he be granted leave to withdraw and that [Petitioner] be permitted to proceed pro se. On October 19, 2009, a hearing was held on [Petitioner]'s motion to represent himself at trial and waive his right to counsel. On October 20, 2009, argument was held on Mary Weitzel's motion to sever, at which time [Petitioner] joined the motion. On October 21, 2009, the trial court denied "Defendants' Joint Motion to Sever," granted [Petitioner]'s motion to represent himself, and appointed Gerald Lee Cassady, Esquire (Attorney Cassady) as stand-by counsel.

[Petitioner] proceeded to a jury trial on September 13, 2010. Following a three-day trial, the jury found [Petitioner] guilty of manufacturing a controlled substance (marijuana), possession with intent to deliver a controlled substance (marijuana), criminal conspiracy to commit manufacturing and possession of a controlled substance (marijuana), two counts of possession of a controlled substance (marijuana; mushrooms), and possession of drug paraphernalia.

At [Petitioner]'s request, the trial court appointed Attorney Cassady to represent [Petitioner] at sentencing. The trial court ordered a pre-sentence investigation. At the sentencing hearing on November 2, 2010, the trial court found by a preponderance of the evidence that, at the time [Petitioner] committed the offense of possession with intent to deliver, there were firearms in close proximity to the controlled substance, requiring a mandatory minimum sentence of five years' imprisonment. The trial court then sentenced [Petitioner] in the aggregate to 60 to 120 months' imprisonment and a $5,000.00 fine plus costs.

(Appeal from Judgment of Sentence, ECF No. 8-4 at pp.159-165) (internal footnotes and citations to the record omitted).

Petitioner's judgment of conviction was affirmed on November 17, 2011, but his sentence for possession with the intent to deliver marijuana (PWID) was vacated and the case was remanded for resentencing, due to the sentencing court's misinterpretation of a state mandatory minimum sentencing provision. Petitioner filed a petition for allowance of appeal to

4

the Pennsylvania Supreme Court, which was denied on March 21, 2012. On May 16, 2012, Petitioner was resentenced on the PWID count to a term of incarceration of 60 months and to pay a fine of $5,000.00. Petitioner did not file any collateral appeals in state court.

The instant habeas petition was signed on August 29, 2012, and filed on September 18, 2012. Respondents concede that the petition was filed within the applicable statute of limitations period pursuant to 28 U.S.C. § 2244(d)(1)(A), which provides a 1-year period of limitation to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court.

## II. STANDARD OF REVIEW

This case is governed by the federal habeas statute applicable to state prisoners, 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Petitioner's judgment of sentence was obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See*, *e.g.*, Priester v. Vaughn, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). *See also* Real v. Shannon, 600 F.3d 302, 309-10 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 687, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state

5

courts' legal and factual determinations." Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). As codified at 28 U.S.C. § 2254(d), AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was *contrary to,*[1] *or involved an unreasonable application of,*[2] *clearly established Federal law, as determined by the Supreme Court of the United States*; or
>
> (2) resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence presented in the State court proceeding*.[3]

(Emphasis added).

---

[1] "The test for § 2254(d)(1)'s 'contrary to' clause is whether the state court decision 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it contradicts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.' Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams v. Taylor, 529 U.S. 362, 405 (2000), and Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Of course, a state court's resolution of a question that the Supreme Court has not resolved can be neither contrary to, nor an unreasonable application of, the Court's precedent. See Kane v. Garcia Espitia, 546 U.S. 9 (2995)." Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (bracketed text in original) (parallel citations omitted).

[2] "The test for § 2254(d)(1)'s 'unreasonable application of' clause is as follows: '[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case.' Rompilla v. Beard, 545 U.S. 374, 380 (2005) (quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)). For purposes of § 2254(d)(1), '[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous.' Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal quotations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' Id. at 75-76, 123 S. Ct. 1166 (quoting Williams v. Taylor, 529 U.S. 362, 411 (2000)). Rather, '[t]he state court's application of clearly established law must be objectively unreasonable' before a federal court may grant the writ. Andrade, 538 U.S. at 75." Roundtree, 640 F.3d at 537 (parallel citations omitted).

[3] "The test for § 2254(d)(2)'s 'unreasonable determination of facts' clause is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. See Rice v. Collins, 546 U.S. 333, 338-39 (2006) ('State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ('Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence.'). Importantly, the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. Cullen v. Pinholster, – U.S. – [ ], 131 S. Ct. 1388, 1401-03 (2011)." Roundtree, 640 F.3d at 537-38 (parallel citations omitted).

6

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume that all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See*, *e.g.*, Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also* Weeks v. Snyder, 219 F.3d 245, 259 (3d Cir. 2000) (quoting Marshall v. Longberger, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court); Miller-El v. Cockrell, 537 U.S. 322, 339-41 (2003).

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. *See*, *e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838 (1999). Petitioner has the burden of establishing that exhaustion has been satisfied. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, and federal courts may review the merits of a state prisoner's claims prior to exhaustion when no appropriate state remedy exists. Christy v.

Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c). An application for a writ of habeas corpus may be denied on the merits, however, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. 28 U.S.C. § 2254(b)(2).

## III.     DISCUSSION

1. Proximity of gun and drugs as jury question.

In his habeas petition, Petitioner argues that he would have received only the one-year mandatory sentence for possession with intent to deliver marijuana, and not the statutory mandatory minimum of five years' imprisonment for offenses committed with firearms, had the proximity of guns to drugs issue, which he maintains was an "element" of the crime, been submitted to the jury and established beyond a reasonable doubt.

Background for this claim is as follows. Petitioner was convicted of possession with intent to deliver marijuana in violation of 35 P.S. § 780-113(a)(30), and thereby faced a *statutory maximum* sentence of five years' imprisonment pursuant to 35 P.S. § 780-113(f). The weight of the marijuana at issue was one-thousand two-hundred and thirty-nine grams, which was found in a suitcase at the foot of Petitioner's bed. In connection with this charge, there was testimony at trial that six firearms were present in Petitioner's bedroom, the closest being approximately ten feet to the suitcase containing the marijuana. Therefore, at sentencing, the Commonwealth sought the applicable mandatory sentences for this count, which included: (1) a one-year mandatory sentence pursuant to 18 Pa.C.S. § 7508(a)(1)(i), for felony possession with intent to

deliver or unlawful delivery of marijuana more than two pounds but less than ten; and (2) a five-year mandatory minimum sentence for offenses committed with firearms pursuant to 42 Pa.C.S. § 9712.1(a).[4] The sentencing judge found that the Commonwealth had met its burden (preponderance of the evidence) and imposed the mandatory five-year minimum sentence under 42 Pa.C.S. § 9712.1(a) for the firearms being in close proximity to the marijuana. He did not, however, impose the additional consecutive one-year mandatory sentence for the weight of the marijuana under to 18 Pa.C.S. § 7508(a)(1)(i).

Petitioner argues that his Sixth Amendment right to a jury trial was violated because the question of whether the firearms were in close proximity to the controlled substance was an issue of fact for the jury to determine since it was an element that increased the prescribed range of penalties to which he was exposed. In support of his argument, Petitioner relies on Apprendi v. New Jersey, 530 U.S. 466 (2000), in which the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. In considering this issue on Petitioner's direct appeal, the Pennsylvania Superior Court noted a prior decision in which it held that 18 Pa.C.S. § 7508 does not violate the principles of Apprendi because it only regulates the minimum sentence and does not increase the statutory maximum punishment or change the grade in the crime. (Appeal from Judgment of

---

[4] 42 Pa.C.S. § 9712.1(a) provides that a person who is convicted of violating 35 P.S. § 780-113(a)(30), shall be sentenced to a *mandatory minimum* of at least five years' imprisonment if "at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance."

Section § 9712.1(c) provides that the provisions of this section shall not be an element of the crime and that the applicability of it shall be determined by a preponderance of the evidence at sentencing with the court considering evidence presented at trial and any additional evidence presented by the Commonwealth and the defendant at sentencing.

Sentence, ECF No. 8-4 at p.178) (citing Commonwealth v. Kleinicke, 895 A.2d 562 (Pa. Super. 2006 (*en banc*), *appeal denied*, 929 A.2d 1161 (Pa. 2007)). Turning to the issue before it, whether 42 Pa.C.S. § 9712.1 violates the principles of Apprendi, the Superior Court similarly held that it did not because it merely regulates the minimum, not the maximum sentence. In reasoning, the court stated that Section 9712.1 "did not provide for an increase in the maximum sentence for the offense[,]" and "the legislature expressly provided that its provisions 'shall not be an element of the crime.'" (ECF No. 8-4 at p.179) (quoting 42 Pa.C.S. § 9712.1(c)). Thus, it concluded that the trial court properly imposed a five-year minimum sentence after determining that Section 9712.1 applied.[5] Id.

While Petitioner raises this as an Apprendi claim, since the filing of his habeas petition the United States Supreme Court has decided Alleyne v. United States, 133 S. Ct. 2151 (2013), in which it held that any fact that triggers an increase in the mandatory minimum sentence for a crime is necessarily an element of the offense which must be submitted to a jury.[6] Id. 2163-64. The Court in Alleyne reasoned that "the core crime and the fact triggering the mandatory minimum sentence together constitute a new, aggravated crime" and consequently the Sixth Amendment requires that every element of the crime, including any fact that triggers the mandatory minimum, must be alleged in the charging document, submitted to a jury, and found beyond a reasonable doubt. Id. at 2160-64.

Since the issuance of Alleyne, the Pennsylvania state courts have had occasion to consider its effect on § 9712.1 in several cases. *See* Commonwealth v. Hunt, 2014 Phila. Ct.

---

[5] Nevertheless, the Superior Court vacated Petitioner's judgment of sentence and remanded for sentencing because, as the Commonwealth conceded, the trial court should have imposed a flat five-year sentence, as the mandatory minimum and maximum for Petitioner's offense were both five years' imprisonment. (ECF No. 8-4 at p.180-81.)

[6] Alleyne is an extension of Apprendi.

Com. Pl. LEXIS 99 (Pa. C.P. Apr. 17, 2014) (citing cases). Based on these cases, the Common Pleas Court has stated that it is clear "a trial court can no longer sentence a defendant to the mandatory minimum of § 9712.1(a) in strict compliance with the dictates of § 9712.1(c) and avoid running afoul of the Constitution." Id. Additionally, the Pennsylvania Superior Court has stated that "[t]he Alleyne decision . . . renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard." Commonwealth v. Watley, 81 A.3d 108, 117 (Pa. Super. Ct. Nov. 25, 2013). Indeed, since Alleyne, the Pennsylvania Supreme Court has vacated and remanded cases where the Superior Court has affirmed the imposition of a mandatory minimum sentence under § 9712.1. *See* Commonwealth v. Velazco-Mena, 2014 Pa. LEXIS 953 (Pa. Apr. 14, 2014); Commonwealth v. Jabbar, 2014 Pa. LEXIS 868 (Pa Apr. 2, 2014). However, those cases were decided after the United States Supreme Court issued Alleyne and in this case the Superior Court denied Petitioner's claim on the merits over a year before Alleyne was decided. Therefore, despite the current state of the law in Pennsylvania with respect to this issue, the pertinent question before this Court is whether it may look to Alleyne in light of the restrictions imposed on federal habeas review under AEDPA's standard of review codified in 28 U.S.C. § 2254(d)(1).

As set forth above, AEDPA provides that when a state court has adjudicated the merits of a petitioner's federal constitutional claim, federal habeas relief may not be granted unless the petitioner shows that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). The statutory phrase "clearly established Federal law" in § 2254(d)(1) "refers to the holdings" of the United States Supreme

11

Court's "decisions *as of the time of the relevant state-court decision.*" Carey v. Musladin, 549 U.S. 70, 74 (2006) (quoting Williams, 529 U.S. at 412) (O'Connor, J., for the Court) (emphasis added). The "relevant state-court decision" in this case is the Pennsylvania Superior Court's Memorandum Opinion and Order dated November 17, 2011, wherein it concluded that § 9712.1 does not violate Apprendi and that the trial court properly imposed a five-year minimum sentence after determining that § 9712.1 applied. The Superior Court's adjudication of this claim was neither "contrary to" nor an "unreasonable application" of Apprendi, which was the "clearly established Federal law, as determined by the Supreme Court of the United States," at the time. Accordingly, Petitioner is not entitled to habeas relief on this claim.[7]

2. Fourth Amendment Claims

Petitioner next argues several violations of his Fourth Amendment rights. First, he claims that the trial court erred in declining to suppress the evidence against him on the basis that it was discovered through an illegal search by the DHL courier, Lemons, who he claims was not acting as a private citizen, but rather as an agent of the police. Second, he claims that the Commonwealth lacked probable cause to obtain a warrant to search the DHL package. Third, he claims that the trial court erred in refusing to suppress the evidence gleaned from the search of his residence because the package "did not contain contraband per se" and therefore did not support the issuance of a warrant. He also claims that the original search of the package was

---

[7] Furthermore, the issue of whether Alleyne may be applied retroactively to cases on collateral review has not yet been decided by the United States Supreme Court. *See* United States v. Winkelman, 746 F.3d 134, 136 (3d Cir. 2014). *See also* Tyler v. Cain, 533 U.S. 656, 663 (2001) ("[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive."). When faced with this question, the Third Circuit Court of Appeals has concluded that Alleyne, while maybe a new rule of law, is not retroactive on collateral review. Winkelman, 746 F.3d at 136.

unconstitutional. Finally, he claims that the trial court erred in denying relief on his claim that the police made material misstatements in their affidavit of probable cause.

The aforementioned claims are not cognizable in federal habeas. In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the Supreme Court held that a federal court may not grant a state prisoner habeas corpus relief on a claim that evidence obtained in an unconstitutional search or seizure was introduced at his trial if the State had already provided an "opportunity for full and fair litigation" of the Fourth Amendment claim, explaining:

> [T]he additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs. To be sure, each case in which such claim is considered may add marginally to an awareness of the values protected by the Fourth Amendment. There is no reason to believe, however, that the overall educative effect of the exclusionary rule would be appreciably diminished if search-and-seizure claims could not be raised in federal habeas corpus review of state convictions. Nor is there reason to assume that any specific disincentive already created by the risk of exclusion of evidence at trial or the reversal of convictions on direct review would be enhanced if there were the further risk that a conviction obtained in state court and affirmed on direct review might be overturned in collateral proceedings often occurring years after the incarceration of the defendant. The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in search or seizure that went undetected at trial and on appeal. Even if one rationally could assume that some additional incremental deterrent effect would be presented in isolated cases, the resulting advance of the legitimate goal of furthering Fourth Amendment rights would be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice.
>
> In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

428 U.S. at 493-94 (footnotes and internal citations omitted). *See also* Deputy v. Taylor, 19 F.3d 1485, 1490 (3d Cir. 1994) (rejecting a Fourth Amendment claim because the petitioner had had a full and fair opportunity to litigate it in the state court, and noting that under Stone, "[e]ven otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."). It cannot be disputed that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state court. *See* ECF No. 8-4 (Findings of Fact, Memorandum Opinion and Order of Court dated Dec. 5, 2007, denying Petitioner's Omnibus Pre-trial Motions to Suppress Evidence). Therefore, Petitioner is not entitled to habeas relief on these claims.

3. Role of Standby Counsel

Petitioner argues that the trial court erred in not allowing standby counsel to play a role in the trial other than that of a legal resource. In denying this claim on direct appeal, the Pennsylvania Superior Court noted that Petitioner knowingly, intelligently and voluntarily waived his right to be represented at trial by counsel pursuant to Faretta v. California, 422 U.S. 806 (1975), which held that an accused has a Sixth Amendment right to conduct his own defense. It also noted that hybrid representation is not permitted and although Pennsylvania law permits a defendant to waive the right of self-representation after asserting it, there was no indication in the record that Petitioner later changed his mind and wished to be represented by counsel at trial.

The Superior Court's conclusion that this claim was foreclosed by Petitioner's waiver of his right to an attorney, which is uncontested, was a reasonable application of federal law. While it is within the discretion of the trial court to choose to appoint, or not to appoint, standby counsel, Thomas v. Carroll, 581 F.3d 118, 125 (3d Cir. 2009) (noting that after the defendant

chose to represent himself, the court "*could* have appointed standby counsel") (emphasis in original), a defendant is not constitutionally entitled to "hybrid representation" if standby counsel is appointed, McKaskle v. Wiggins, 465 U.S. 168, 184 (1984) (explaining that the "defendant does not have a constitutional right to choreograph special appearances by counsel" while otherwise representing his or her self."). Pennsylvania courts have recognized this principle. *See* Commonwealth v. Ellis, 626 A.2d 1137, 1139 (Pa. 1993).

Petitioner complains that he was prejudiced by the limited role of standby counsel, but the Supreme Court has stated that the primary concern arising out of appointment of standby counsel is that appointed standby counsel does too much . . . not that counsel does too little. *See* McKaskle, 465 U.S. at 177. Counsel is there "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." Id. at 184. The role of standby counsel therefore is limited and subordinate to the role played by the pro se defendant, who maintains control of his defense. Petitioner has failed to demonstrate that the Superior Court's decision is in any way inconsistent with Supreme Court precedent or the facts of record. Accordingly, habeas relief will be denied on this claim.

4. Severance

Petitioner's final claim is that he was deprived of his Fifth Amendment right to remain silent at trial by the trial court's refusal to sever his trial from those of his wife and son. The trial court found that Petitioner failed to raise this claim at the time argument was held on the motion to sever. On appeal, the Superior Court noted that the certified record did not contain a transcript of the argument on the motion to sever or any other documentation indicating that Petitioner properly preserved the issue. Therefore, it concluded that the issue was waived pursuant to

Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

A state prisoner must provide the state courts with the first opportunity to consider any claim that he has raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A). This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002) (quoting Coleman, 501 U.S. at 731). *See also* O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). In order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); O'Sullivan, 526 U.S. at 848. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. *See* Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004). The petitioner must demonstrate that he raised the claim in the proper state forums through the proper vehicle, not just that he raised a federal constitutional claim before a state court at some point. O'Sullivan, 526 U.S. at 845 (a petitioner must have presented a claim through the "established" means of presenting a claim in state court at the time); Ellison v. Rogers, 484 F.3d 658, 660-62 (3d Cir. 2007) (the petitioner's claims of ineffective assistance were not exhausted properly even though he had raised those claims on direct review, because state law required that ineffective assistance claims be raised in state post-conviction review, and the petitioner had not sought such review).

Petitioner did not properly exhaust the claim that his right to remain silent was infringed by the trial court's denial of his motion to sever because he did not properly raise this claim

16

before the trial court and therefore on direct appeal the Superior Court deemed it waived pursuant to Pa.R.A.P. 302(a).

If a petitioner has failed to properly exhaust his claim – for example, he failed to comply with a state procedure rule such as Pa.R.A.P. 302(a)'s waiver rule – and as a result the state court declined to adjudicate the claim on the merits, the claim is defaulted in federal habeas corpus under the procedural default doctrine. *See*, *e.g.*, Coleman, 501 U.S. at 730; O'Sullivan, 526 U.S. at 851-56 (Stevens, J. dissenting) (describing the history of the procedural default doctrine). The procedural default doctrine prohibits federal habeas courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment. *See*, *e.g.*, Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732.

Here, the Pennsylvania Superior Court's decision was based on the application of a state procedural rule that is "independent" of federal law. The waiver rule applied by the Superior Court (Pa.R.A.P. 302(a)) is also "adequate." A state rule is "adequate" if: (1) the rule speaks in unmistakable terms; (2) the state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule; and (3) the state court's refusal was consistent with other decisions. Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007). *See also* Beard v. Kindler, 130 S. Ct. 612 (2009) (discretionary state rules can be "adequate"); Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (a state procedural rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred). The Superior Court's application of Pa.R.A.P. 302(a) was "adequate," since that rule clearly states that issues not raised in the lower court are waived, and since at the time of Petitioner's waiver, Pennsylvania appellate courts regularly held that claims were waived when

those claims were raised for the first time on appeal. *See* 20 G. Ronald Darlington *et al.*, Pennsylvania Appellate Practice § 302:1 (2011-12 ed.) (collecting cases and explaining that Pennsylvania courts have applied Appellate Rule 302(a) "consistently" and that "[a]lthough exceptions to the general rule have been permitted, they occur primarily where either important issues of public policy are concerned or where counsel had no opportunity to raise an issue below.") Based on all of the forgoing, Petitioner's claim will be denied as procedurally defaulted.[8]

### IV. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. As provided for in 28 U.S.C. § 2253, "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying

---

[8] A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, *i.e.*, that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; *see also* Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner does not argue that he can establish "cause" for his default or "actual prejudice." A petitioner may also overcome his procedural default if he can demonstrate a "miscarriage of justice." This exception provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). *See also* House v. Bell, 547 U.S. 518 (2006). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. It is not applicable to Petitioner's case.

constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner has not made the requisite showing in these circumstances. Accordingly, a certificate of appealability will be denied.

**V.     Conclusion**

For the reasons stated herein, the habeas petition and a certificate of appealability will be denied. A separate Order will issue.

Dated: June 12, 2014.

/s/ Lisa Pupo Lenihan  
Lisa Pupo Lenihan  
Chief United States Magistrate Judge

Cc:   Bradley C. Weitzel  
JV-2950  
SCI Somerset  
1600 Walters Mill Road  
Somerset, PA  15510-0001  
*Via First Class Mail*

Counsel of Record  
*Via ECF Electronic Mail*